Our next case this morning is United States v. Kielar.  Good morning, Your Honor. My name is Jacob Nelson, and I'm an attorney for Ronald Kielar. Primarily I'm going to focus on this morning are the counsel-related issues that we raised in our briefs, but I would also be more than willing to respond to any questions relating to the cross-examination issues and those limitations that were raised on defense counsel's ability to examine Dr. Barrows, as well as the limitation on defense counsel's ability to call Fernando Lopez as a witness. The trial court was required to order a sua sponte evidentiary hearing regarding whether probable cause existed to restrain the proceeds from the sale of the Florida property, which was about $77,000, once Mr. Kielar demonstrated that he had a bona fide need to use the funds to obtain counsel consistent with the Fifth Amendment's due process requirement for the qualified Sixth Amendment right or qualified liberty interest to be able to appoint counsel of your choice. Repeatedly, I mean, the record was fairly exhaustive. These motions came up repeatedly trying to release these funds as Mr. Kielar was trying to sell the Florida property. The government insisted on putting on a list pendants on that property, and the attempts to try to restrain those funds, Mr. Kielar repeatedly asked the government to say, you know, release these funds, make the government prove that these funds are in some way connected to the fraud, and the government never did so. Actually, there was no request for a hearing, and in fact, when it was offered, counsel declined it. Yeah, so, and that's technically correct. The offer to have the evidentiary hearing was not actually made until July 8th of 2011, which was after two rounds of orders and briefing were closed on the subject, that those orders became final. There was a lot of confusion as well as to what that evidentiary hearing would entail. The way that the law, I believe in the Seventh Circuit, should be, at least as my reading of Kirshenbaum and of Moya-Gomez, is that once a bona fide need to use the funds that are subject to the post-indictment pretrial restraint have been proven, saying if I don't have the ability to use these funds, I can't get the counsel of my choice, then the government needs to come forward at the evidentiary hearing and then show the traceability of the funds. They never had to do that. There was never an affidavit from the government that – And wasn't it waived in this case? I mean, even assuming that you're right, that the court has an obligation to hold one sua sponte, even if it's not asked for, can't that right be waived? I think that's the kind of thing that via the nature of a competency issue, it's the kind of thing that I think the district court has some responsibility to make sure once the defendant has said, I want to have my attorney and I need to have access to these funds, that these funds are actually properly restrained, consistent with that liberty interest. Now the – Even against the defendant's wishes, if he says he doesn't want a hearing. I mean, it's not like competence where, you know, there's – the court has to hold a hearing. This doesn't go to the competence to stand trial. No, but it does go to the competence to – or it does go to sort of the elemental right that a person has to – at least a qualified right to have the attorney of their choosing. And it's my understanding that when I read the record, there was a lot of confusion about what that evidentiary hearing would entail and that the burden was going to be on Mr. Keillor at that evidentiary hearing. And to the extent that was the way the hearing was presented, I believe he rightfully declined to want to try to further testify at that hearing. What Mr. Keillor, I believe, wanted and what the government never did was to at least see some evidence on the subject, which he mentioned in his briefs, the government just relied on base allegations about the traceability of these funds, which the district court accepted without any further demand of proof. There were footnotes in briefs that were authored by the government. And under such – under such circumstances, there – even for the more minimal probable cause showing, which is all that would – the government would be required to prove once Mr. Keillor demonstrated the bona fide need to use the assets, simply relying on the briefs of counsel can't satisfy a probable cause hearing. At least Mr. Keillor submitted an affidavit in this case saying that he demonstrated a financial need to be able to access the funds. Mr. Keillor's attorney said that Mr. Keillor was in arrears, and at least that's one thing that he would be qualified to say, is he was going to withdraw as his counsel if he was not entitled to have access unless the $70,000 from the sale of the Florida property was released. So those were all sort of admissible – admissible statements that were made by Mr. Keillor and Mr. Keillor's attorney. And contrary-wise, the government didn't put in any affidavit at all at any point in the hearing and said their investigation is ongoing. And they said they were able to trace at least one check, but that one check was for about $6,000. It wasn't for the full $77,000. And the government never even presented that check for the district court to be able to make a decision on whether or not the check itself, plus the government's explanation for the traceability of that check, would be the probable cause in order to allow for the post-indictment pretrial detention of those proceeds pending a trial on the merits. Certainly if Mr. Keillor were then to be acquitted, of course, all the funds would have been released subject to the restraining order, but at least Mr. Keillor should have had the opportunity to have access to those funds. And another important issue is that on December 7, 2010, so about seven months or eight months before the purported waiver by Mr. Keillor's counsel, he did say there needed to be a more detailed hearing that the district court should have on this case. And I'll honestly say the trial counsel for Mr. Keillor did not say it needed to be a contested evidentiary hearing, but he did say there's going to need to be a more detailed hearing on this point. And again, the district court didn't say, okay, we'll proceed with the hearing. Let's see what the government's evidence is on this case. It may very well, the government may have been able to prove traceability without much difficulty, but the fact remains they never did. I mean, they never put forth any evidence at all that under Moya-Gomez says that's the government's burden. And whether or not Mr. Keillor had a bona fide need, whether or not he successfully demonstrated that, the district court assumed without deciding that point. Certainly, if there were any problems in the proof presented by Mr. Keillor, he would have had the opportunity to supplement that. But as this court has to make statements on the record when there is a forfeiture allegation. And so Mr. Keillor understandably did not want to put in a treaties of his financial records and information if it wasn't necessary. The district court said it wasn't necessary because it assumed without deciding that Mr. Keillor's proffer of the bona fide need for the assets to retain the attorney of his choice was demonstrated. At which point, during the many motions, rounds of reconsideration, Mr. Keillor never put in any additional record or any additional facts on that point. And I think it would be unfair to... Right. I mean, there were obviously a lot of strategic decisions being made along the way as this was unfolding. But generally, defendants are held to those strategic decisions. And if one of them was, Judge, we will not be asking for an evidentiary hearing concerning the funds, quoting from the record, it kind of stuck with that. And again, as far as it goes, well, I guess I would say there's two points. One, I think the district court, again, has the responsibility to say, I don't care what the defendant wants in this case. This is something that I, as the court, need to satisfy myself that the government can properly restrain these assets. I think that's a fair reading of what the court's obligation should be. And the theory behind that would be that the court should override the defendant's strategic choices and express wishes not to have a hearing? Because? Because we're talking about property. We're talking about the restraint of assets without a final jury verdict on this point, without the judge sentencing during the court... And the court has an obligation to protect the defendant's interests even when he doesn't want them protected. The court has an obligation when the government is attempting to seize and impair property to at least satisfy itself that it can enter that order. In this case, without an evidentiary hearing, there's no way that the government, or there's no way that the district court could satisfy itself that, in fact, there was sufficient evidence to constitute proper costs. Certainly there was nothing admissible in this case. At a minimum, I mean, whether or not there had to be a live contested hearing with an express waiver by the defendant, at a minimum there would have to be affidavits by a government agent or a government representative that would say, this is the funds, this is how we've attempted to trace the funds, and if the defendant doesn't want to cross-examine that witness, wants to avert that those facts are correct, so be it. And then the district court will have enough to be able to make that probable cost finding to allow for the detention of those assets. Frankly, that simply didn't occur in this case. Mr. Keillor did not have an opportunity to put the government to his proof. He said the government has not proved it. Mr. Keillor believed the burden was on the government. And his trial counsel sometimes I think made the correct argument, sometimes didn't, but at bottom on whether or not the funds are traceable, the burden does properly belong to the government. And that's something that Mr. Keillor's counsel did say, saying, you know, I'm not going to testify on the bona fide need for my assets. And that's what Mr. Keillor's counsel wanted to avoid. He wanted to avoid an evidentiary hearing where Mr. Keillor would have to take the stand and testify. But that never should have been on the game board. What the hearing should have been about is the government bringing forth their records and be able to walk through the traceability of those funds. And that never happened. And I think also on the waiver point, it should be construed liberally insofar as you have a situation like we have here where there was sort of confusion or a fog of war. The district court repeatedly said, I was trying to figure, the district court said, Moya Gomez is not exactly clear. I'm not exactly sure what our obligations are in this case. And when sort of the scope of that hearing was unclear, I believe that, you know, some latitude should be given on the decisions that were made by the defendant's counsel. Because again, I think it's very fair for the strategic decision not to put Mr. Keillor on the stand, but the fact that the government never had to put forth their admissible evidence. And even under the more relaxed standards as required for probable cause and even under maybe the relaxed evidentiary requirements, that would be maybe the federal rules of evidence won't apply, but at least you have to come forth with evidence. Moya Gomez was written in the late 18, 1980s. That's correct. Anybody ever made this argument before that Moya Gomez requires an argument, requires a hearing even if one is not requested? Not if it wasn't requested. The Kirshenbaum case did make very clear that, which was I think six or seven years after Moya Gomez, that said not only an adversary hearing, but it had to be an immediate evidentiary hearing needed to be held on the subject. There is no courts throughout the country that have placed this obligation with the district court, but I think a fair reading of Moya Gomez is that the ---- Moya Gomez, there was a request. There was. That's correct. So why is it a fair reading to say the district court has to hold it in any event? Just based on the sort of the plain language of the meeting. Certainly, the facts of that case would be the same. I wrote Moya Gomez and, quite frankly, that sounds like soundbite research. You called a couple of words out of an opinion. Sure. But I think if you were to. That's all you've got, right? You called a couple of words out of an opinion. Well, but I think what Kirshenbaum, which I assume took a clean look several years later at the Moya Gomez decision. I think the Court of Appeals take on Kirshenbaum also makes very clear that there is a hearing right, that there needs to be able, the government needs to be able to put forth their proof. And if the government doesn't want to do it, which Kirshenbaum, again, taking Moya Gomez and other precedents from other circuits, makes very clear if the government doesn't want to come forward with that proof, then there has to be a release of the funds that are subject to the restraining order. And then the district court can exercise their oversight as to what amount of funds are reasonable in that case. But, of course, we never got to that place because there was no opportunity for a hearing. If there's any other questions, I think I'm in rebuttal time. So thank you. Mr. Wallach. Good morning, honors, counsel, and may it please the court. My name is Brian Wallach and I represent the United States government. As your honors have already noted, the right to a hearing can be waived and there is no reason why this right is in the category where a waiver cannot occur. In addition, as your honors have already noted, the defendant expressly waived his fifth amendment due process argument when his counsel unambiguously stated in response to a direct question from the district court that the defendant would, quote, not be asking for an evidentiary hearing concerning the funds. Now, to respond to a point made by defendant's counsel, this statement is clearly relevant for determining waiver because this statement took place after the district court had stated that it was willing to consider a motion by the defendant requesting an evidentiary hearing. Moreover, it took place after the defendant was given over a month by the district court to consider whether to request such a hearing. After taking this time, the defendant decided not to ask for a hearing and this, your honors, I would submit constitutes waiver. The defendant noted that there was discussion in the record regarding the appropriate standard to be applied. This argument, I would submit, your honors, is a red herring. There was no discussion of what standard should be applied because there was no motion here. There was no movement for an evidentiary hearing. Instead, as I noted a second ago, the defendant expressly waived his fifth amendment rights in this case. Well, there was a lot of back and forth about what standard governed the restraint decision, right? Whether and what showing had to be made, whether it should be probable cause beyond a reasonable doubt, whether the underlying probable cause for the offense was a proper subject of litigation. Isn't it true that there's a great deal of discussion on that and sort of ambiguity about what would be applied? Yes, your honor. I think that's the reason why the district court in this case said at the end, defendant, please take some time to consider whether or not you'd want to move to this for this evidentiary hearing. And if you do, please submit a motion indicating what you think the standard should be, how you think things should take place. After being given that time, the defendant went back, considered, and came back and made that clear unambiguous waiver that I quoted a second ago. And so while that discussion did take place, that discussion was then superseded by the hearing that comes. Moreover, your honors, defendant mentioned the fact that there was a December 2010 reference to a potential hearing. The second part of that statement, the defendant's counsel did not mention, was that the defendant's counsel then suggested briefing, which is exactly what the defendant got in this case. There were months and months of briefing, months and months of hearings. And so in this case, the defendant received more than the process due. In addition, the defendant actually had in his possession the actual documents that the government relied upon for its demonstration of the basis for the forfeiture assertion. These were the defendant's bank account records. And the notes that were included in the briefs set forth very clearly the traceability of the funds from the defendant's fraud, proceeding from the corporate bank account to the defendant's private personal account, and then to payments for the Florida property, which is the property at issue here. Those funds, your honor, were not just limited to one check. There was one check from the corporate account. In addition to that one check, there were multiple checks and multiple transfers from the defendant's personal savings account, or I apologize, checking account. All that was set forth in the government's briefings. All that was before the court. All that was in the defendant's possession. And at no point in time did the defendant actually attempt to contradict or contest this showing. Indeed, the defendant never even asserted that he could do so. And in fact, the defendant went one step farther and noted for the district court that if there were to be an evidentiary hearing, the defendant would present no evidence to contradict the government's uncontroverted showing. And so in this case, there was nothing new that would have transpired or taken place in an evidentiary hearing. And that's certainly no need for a court to sui sponte grant one. And at the end of the whole thing, the district court asked him if he wanted a hearing and he said no. That's correct, your honor. End of case. We would submit that's correct. If there are no further questions from this court, the government would rest on its briefs for the rest of the issues discussed. And for the reasons discussed here today, along with those set out in the government's brief, the United States respectfully requests that this court. Counselor, before you do summarize up, throughout your brief, I had a hard time seeing any clear articulation of exactly why Dr. Barros was called by the United States and what the United States hoped to be able to prove by his testimony. And that as a result, I read the discussion between the two counselors, well, kind of much ado about nothing. I really couldn't understand. You didn't give me any context. Can you tell me why, why, what was, why was Dr. Barros called? What were you trying to prove? Well, your honor, I was, I was not actually the assistant that tried. I understand it. You're just, I'm talking institutionally. Yes. You're the appellate counsel. Yes, your honor. But based on the record, what had happened in this case was the defendant had actually submitted fraudulent claims for procreate through which he obtained about $1.6 million of funds from two insurance companies through their third-party beneficiaries. The basis upon which the defendant originated this fraud was by using blank prescription pads with Dr. Barros's name on it. And so the government had called Dr. Barros and Dr. Barros testified to the fact that he never actually wrote these prescriptions.  That was the core of his testimony. There was that core of the testimony. There was also testimony, um, going to the fact, uh, as to, as what the defendant's counsel brought out as to Dr. Barros's history, his practice. Um, and that was what he had been called for was to really address the question of, uh, you know, defendant's argument that he was attempting to solicit, which is that somebody else did this. I see. Thanks, Mr. Barros, appreciate that. Thank you, your honors. If no further questions, uh, the government would ask that this court affirm the defendant's conviction and deny the defendant's appeal in full. Thank you. Thank you. Mr. Nelson, anything further? What was, uh, said at the December 7th, 2010 hearing by Mr. Keillor's counsel was, um, it may require a more detailed hearing before your honor as to what the needs of the defendant are and why we believe that those funds would have to be used. Uh, it seems very clear as of December, there was a request for a hearing and the court didn't put that into motion. The precedents of this court were pretty clear about an immediate, uh, hearing once the issue was put in play. That hearing was never offered until many months later, uh, until again, in fact, briefing had closed on the subject. Um, and another thing, uh, that, uh, that the government pointed out, uh, that I, I wish to respond to is they only relied on the briefs. They said that the defendant was aware of some of these records, but with particularity, there was just a mountain of documents that the government provided to the defendants. They didn't try to explain which records established the traceability. Certainly the district court was never shown that, that proof outline that was trying to tie, connect all the dots together. So even if it's correct that the court doesn't have to order a suit, well, I think the court does have an obligation to have an evidentiary hearing. And then if the district, and if the defendant does choose to deny or chooses to waive that hearing, then at a minimum, the government should still be put to some level of proof as to these funds. And it was just the briefs that the government relied upon, which is not admissible evidence. And, uh, how the government or how, how the district court could have a factual basis to restrain those funds once Mr. Keillor had made the bona fide showing that he needed those assets, I think is, is clear error. Um, and if there's any other issues that the court wishes to have, and I'd be glad to answer them. Apparently not. Thank you, Mr. Nelson. And Mr. Nelson, you were appointed to represent your client in this case? That is correct. The court thanks you for your service to your client in the court. And thanks to all counsel. The case is taken under advisement.